UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
WILLIAM JOHNAKIN,

                         Plaintiff,

            – against –

NYC DEPT. OF CORRECTIONS, WARDEN CRIPPS,
CITY OF NEW YORK, COMMISSIONER DORA
SCHIRRO,[1] INSPECTOR GENERAL ROBERT
GIGANTE,


                         Defendants.
-------------------------------------------------------------------x

**MEMORANDUM AND ORDER**

11-CV-4807 (SLT) (LB)

**TOWNES, United States District Judge:**

        Plaintiff William Johnakin, a former inmate of the Anna M. Kross Center ("AMKC") on

Rikers Island, brings this pro se action pursuant to 42 U.S.C. § 1983, alleging that

defendants—the City of New York; its Department of Correction ("DOC"); DOC Commissioner

Dora B. Schriro; DOC Inspector General, Robert Gigante; and AMKC Warden Robert A.

Cripps—were deliberately indifferent to unconstitutional conditions of confinement and to

Plaintiff's serious medical needs.  Defendants now move to dismiss Plaintiff's complaint under

Federal Rule 12(b)(6), on the grounds that Plaintiff: (1) has failed to exhaust his administrative

remedies as required by 42 U.S.C. § 1997e(a), the Prison Litigation Reform Act ("PLRA"); (2)

has failed to state a deliberate indifference claim; (3) fails to allege that the individual defendants

are personally involved in any violations of Plaintiff's rights under the United States

Constitution or federal law; and (4) fails to allege municipal liability.  For the reasons set forth

below, Plaintiff's complaint is dismissed, but Plaintiff is granted leave to file an amended

complaint.

---

[1] Although Plaintiff's complaint refers to the DOC Commissioner as Dora Schirro, this Court will take judicial notice of the fact that the Commissioner's name is actually Dora Schriro.  This Court will hereafter refer to this defendant by her correct name.

## *BACKGROUND*

In September 2011, Plaintiff commenced this action by filing a completed form entitled,
"Civil Rights Complaint 42 U.S.C. § 1983," and five supplemental pages to prison authorities at
AMKC for mailing to this Court.  Plaintiff's complaint, which seeks monetary damages "for
Deliberate Indifference, Depraved Indifference, Physical and mental stress [and] Physical and
mental Harassment," Complaint, ¶ V, alleges that Plaintiff has been incarcerated in AMKC since
July 10, 2011, and that conditions in the jail are "deplorable" and a "hazard" to his health.
Complaint, ¶ IV, supp. p. 5.[2]  The complaint specifically alleges that these conditions evince a
"total disregard of the minimum standards for all prisoners that were set forth by [the] New York
City Corrections Board," Complaint, ¶ IV, and are a "[v]iolation of [his] 8th Amendment rights"
against "cruel and unusual punishment."  Id., ¶ V.

Much of Plaintiff's "Statement of Claim" is devoted to listing the "Minimum Standards"
which have allegedly been violated.[3]  In paragraph (1), Plaintiff's Statement of Claim alleges
violations of those portions of Section 1-03 which require (1) that prisoners be provided with
certain items of clothing (40 RCNY § 1-03(d)(1)); (2) that "necessary shaving items shall be
provided at [DOC's] expense" upon request (40 RCNY § 1-03(c)(1)); and (3) that prisoners be
provided with specific types of bedding (40 RCNY § 1-03(i)(1)).  First, Plaintiff alleges that
none of the clothing listed in section 1-03(d)(1) was ever provided to him or anyone else that he
met during his 60-day stay in AMKC.  Complaint, ¶ IV, supp. p. 2.  Second, Plaintiff alleges that
there were razors available on only "20 or more" of the "past 60 days" and that there were "no

---

[2]  Because the form complaint provides only 13 lines for Plaintiff's "Statement of Claim," Plaintiff has attached the
five supplemental pages in order to complete his statement of claim.  Since the beginning of Plaintiff's Statement of
Claim appears in paragraph IV of the form complaint, the supplemental pages are numbered 2 through 6.

[3]  These "Minimum Standards" are codified in Chapter 1 of Title 40 of the Rules of the City of New York (the
"RCNY") and are available at http://www.nyc.gov/html/boc/ downloads/pdf/minimum_standards. pdf.

razors at [his] disposal" on each of the three days on which he had court appearances. Id. Third, Plaintiff alleges that he only received "1 towel and 1 sheet" upon his admission to AMKC, and was forced to sleep on "bare mattresses . . . for days" before he received "a set up." Id., supp. p. 3. Plaintiff does not explain what that "set up" contained, but alleges that it was not "a complete set," that he never received a pillow or mattress cover, and that he "caught numerous skin rashes from the bare mattresses." Id.

In paragraph (2), Plaintiff's Statement of Claim alleges a violation of Section 1-06(a) of the Minimum Standards, which creates a policy of providing prisoners "with adequate indoor and outdoor recreational opportunities." Plaintiff alleges that AMKC has a room containing Universal weight equipment intended "for the inmates['] use," but that the room has been "taken over by the Correction Department officers." Id., supp. pp. 3-4. Plaintiff also claims that inmates are prevented from using the gym during bad weather, since the gym is used by the corrections officers to play basketball. Id., supp. p. 4.

In paragraph (3), Plaintiff's Statement of Claim alleges that Section 1-09 of the Minimum Standards, which relates to visitation, has been violated in three respects. First, Plaintiff alleges that Section 1-09(b)(4), which requires that visitors be afforded "access to bathroom facilities … throughout the waiting or visiting period" is violated by the practice of ending visits if the prisoner or visitor needs to use the bathroom. Id. Second, Plaintiff claims that Section 1-09(b)(5), which obligates the Department to "make every effort to utilize outdoor areas for visits during the warm weather months," is disregarded, forcing inmates and their visitors to meet indoors and endure "temperatures reaching 100 degrees." Id., supp. pp. 4-5. Third, Plaintiff alleges that Section 1-09(g)(3), which provides that "[a]ny body search of a prospective visitor … shall be conducted only through the use of electronic detection devices," was violated during visits by his fiancée. Id., supp. p. 5. According to the complaint, Plaintiff's

fiancée told Plaintiff that she had been "touched by female officers in sexual ways, strip[ ] searched and even asked to remove and show them her sanitary napkin." Id.

Aside from the three lengthy paragraphs listing the violations of the Minimum Standards, Plaintiff's Statement of Claim contains two more paragraphs. Paragraph (4) alleges that Plaintiff is housed in a third-floor dormitory, but that "the elevator has not worked in at least 3½ weeks." Id. As a result, Plaintiff, who has arthritis in his back, is forced to walk up and down stairs at every meal "carry[ing] hot scalding pans of food." Id. According to the complaint, this has caused Plaintiff's arthritis to "flare and become more advanced, causing … considerable pain and back spasms." Id.

Paragraph (4) further alleges that Plaintiff "went to medical" to seek treatment for his back. However, it is unclear what assistance or advice Plaintiff received from medical personnel at AMKC. In paragraph IV of the form complaint and again in Paragraph (4), Plaintiff alleges that unspecified members of the medical staff told him "that there is nothing they can do" for him and that he would "have to deal with the pain." However, paragraph IV of the form complaint states that these same individuals told Plaintiff that would have to "get therapy and later on an operation on [his] back."

Paragraph (5) of Plaintiff's Statement of Claim implies that Plaintiff was exposed to friable asbestos emanating from exposed pipes located in the third-floor dormitory. Plaintiff alleges that these pipes "still have parts of the old Asbestos pipe covering on them," and that "most of [the covering] is cracked up and broken off exposing the hazardous materials on the inside." Id., supp. p. 6. Plaintiff does not allege that he suffered any health issues as a result of this alleged exposure or that any of the defendants were aware of the presence of friable asbestos.

Indeed, the defendants are not mentioned in any part of Plaintiff's Statement of Claim. The defendants are named in the caption and in paragraph III of the form complaint, which lists the defendants' names and addresses. However, the defendants are not mentioned again, either by name or as "defendant" or "defendants," except in a notation indicating that a copy of the complaint was sent to defendant Warden Cripps. Id., supp. p. 6.

Plaintiff's complaint specifically alleges that Plaintiff filed a grievance at AMKC relating to the issues raised in his complaint. Paragraph II of the form complaint alleges that Plaintiff "filled out a grievance form about the issues mentioned in this claim and dropped it into the grievance box." Id., ¶ II(C)(1). However, the complaint does not specifically describe what, if anything, occurred as a result of his grievance or allege that Plaintiff took any further actions in connection with this grievance. Rather, in response to a question in the form complaint which asks about "the result" of the grievance, Plaintiff wrote one word: "nothing." Id., ¶ II(C)(2).

### Defendants' Motion to Dismiss

Defendants now move to dismiss Plaintiff's complaint on four grounds. First, relying solely on the vague allegations in Paragraph II of the form complaint, defendants argue that Plaintiff has not exhausted all available administrative remedies. Noting that the PLRA mandates that prisoners exhaust such remedies before commencing an action in federal court, defendants argue that this action is barred by operation of the PLRA.

Second, defendants argue that Plaintiff has failed to state a claim under 42 U.S.C. § 1983 for deliberate indifference to unconstitutional conditions of confinement or to Plaintiff's serious medical needs. With respect to conditions of confinement, defendants principally argue that the violations of the Minimum Standards alleged by Plaintiff did not deprive Plaintiff of "the minimal civilized measures of life's necessities" and, therefore, do not rise to the level of constitutional violations. Memorandum of Law in Support of Defendants' Motion to Dismiss

the Complaint ("Defendants' Memo"), p. 14-16. In connection with this argument, defendants argue that Plaintiff does not have standing to litigate the violations concerning recreation and visitation, because the complaint does not allege that he was personally affected by these violations.

With respect to Plaintiff's claims alleging deliberate indifference to serious medical needs, defendants argue that Plaintiff's arthritis does not rise to the level of a serious medical need. In addition, defendants assert that Plaintiff's allegations relating to his visit to "medical" do not make out deliberate indifference. Defendants assert that, in stating that Plaintiff would have to "get therapy and later an operation," AMKC's medical personnel were prescribing a "course of action," and that Plaintiff's disagreement with the proposed treatment does not create a constitutional claim. Id., pp. 12-14. In addition, relying on Black v. Blackmun, No. 11 Civ. 2372 (BMC) (ALC), 2011 WL 6019394, at *5 (E.D.N.Y. Dec. 1, 2011), defendants argue that Plaintiff's claims regarding exposure to friable asbestos are deficient because Plaintiff has not alleged that he "developed any diseases or conditions relating to that exposure." Defendants' Memo, p. 16.

Third, defendants argue that Plaintiff's complaint fails to state a claim against defendants Cripps, Schriro and Gigante (collectively, the "Individual Defendants") under 42 U.S.C. § 1983 because the complaint does not allege that these individuals were personally involved in the violations of Plaintiff's rights. Defendants assert, inter alia, that the complaint "does not allege that any [Individual Defendants] were even aware of the Plaintiff's present conditions, let alone deliberately indifferent to them." Id., p. 16. Defendants also note that "supervisory liability cannot be based upon a theory of respondeat superior," and that the complaint does not allege a legitimate basis for supervisory liability. Id., pp. 17-18.

Fourth, defendants argue that Plaintiff's complaint fails to allege an adequate basis for municipal liability. Relying on <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978), defendants assert that in order to state a claim against a municipality or municipal officials acting in their official capacities, a complaint "must allege that an official policy or custom of the City or City agencies caused or was the 'moving force' behind the creation of the constitutional violation." Defendants' Memo, pp. 19-20. Defendants note that Plaintiff's complaint does not allege an unconstitutional policy or custom, but rather that "DOC's Minimum Standards were not always met … during the time that [Plaintiff] was at AMKC." <u>Id.</u>, p. 20. In addition, defendants argue in a footnote that DOC is not a suable entity. <u>Id.</u>, p. 20 n. 6.

Plaintiff has not responded to defendants' motion to dismiss. However, Plaintiff's failure to oppose the motion does not "constitute 'default' justifying dismissal of the complaint." <u>McCall v. Pataki</u>, 232 F.3d 321, 322 (2d Cir. 2000) (quoting <u>Maggette v. Dalsheim</u>, 709 F.2d 800, 802 (2d Cir. 1983)). "If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." <u>Id.</u> at 323. Accordingly, this Court must adjudicate the merits of Plaintiff's motion.

## DISCUSSION

### I. *Standard of Review*

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. <u>See</u> <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555–56 (2007). A court's role at this stage is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." <u>Goldman v. Belden</u>, 754 F.2d 1059, 1067 (2d Cir. 1985). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570. If plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." <u>Id.</u> at 570.

A "pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (citation omitted). Accordingly, *pro se* complaints should be read with "special solicitude" and should be interpreted to raise the "strongest [claims] that they suggest." <u>Triestman v. Fed. Bureau of Prisons</u>, 470 F.3d 471, 474-75 (2d Cir. 2006) (citations omitted). This is particularly true when civil rights violations are alleged. <u>See, e.g.</u>, <u>McEachin v. McGuinnis</u>, 357 F.3d 197, 200 (2d Cir. 2004). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the court must grant leave to amend the complaint. <u>See</u> <u>Cuoco v. Moritsugu</u>, 222 F.3d 99, 112 (2d Cir. 2000) (quoting <u>Gomez v. USAA Fed. Sav. Bank</u>, 171 F.3d 794, 795 (2d Cir. 1999)).

## II. *Exhaustion of Administrative Remedies*

Defendants' first argument asserts that this action is procedurally barred because Plaintiff failed to exhaust his administrative remedies, as required by the PLRA. The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2006). The exhaustion requirement "'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes . . .'" <u>Hill v. Curcione</u>, 657 F.3d 116, 124 (2d Cir. 2011) (quoting <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002)). Because "[t]he benefits of

exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance," Woodford v. Ngo, 548 U.S. 81, 95 (2006), "[s]ection 1997e(a) requires 'proper exhaustion,' which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" Hernandez v. Coffey, 582 F.3d 303, 305 (2d Cir. 2009) (quoting Woodford, 548 U.S. at 90).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524). However, "[f]ailure to exhaust is not a jurisdictional issue, but rather an affirmative defense for which Defendants bear the burden of proof." Garcia v. Heath, No. 12 CV 4695 (CM), 2013 WL 3237445, at *4 (S.D.N.Y. Jun. 25, 2013) (citing Jones, 549 U.S. at 212). "Inmates are not required to specifically plead or demonstrate exhaustion in their complaints." (Jones, 549 U.S. at 216). Yet, "[i]f nonexhaustion is clear from the face of the complaint (and incorporated documents), a motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be granted." McCoy v. Goord, 255 F. Supp. 2d 233, 251 (S.D.N.Y. 2003).

In this case, defendants acknowledge that Plaintiff is "not required to allege exhaustion of his administrative remedies in the complaint," but argue that "it is clear from the face of the complaint that … Plaintiff did not exhaust such remedies." Defendants' Memo at 6. Defendants note that "DOC has a well-established administrative grievance process" – the Inmate Grievance Resolution Program or "IGRP" – through which inmates can complain about facility conditions. Id. at 7. The IGRP is a multi-step process which requires an inmate to "(1) file a grievance with the Inmate Grievance Resolution Committee, (2) appeal to the facility warden or his designee, (3) appeal to the Central Office Review Committee, and (4) appeal to the New York City Board of Correction." Leach v. New York City, No. 12 Civ. 3809 (PAC) (JCF), 2013 WL 3984996, at

*1 (S.D.N.Y. Aug. 2, 2013); see DOC Directive 3376, available at http://www.nyc.gov/html/

doc/downloads/pdf/Directive_3376_Inmate_Grievance_Request_Program.pdf (last visited Sept.

12, 2013).  Defendants infer that because Plaintiff alleges only that he "filled out a grievance

form . . . and dropped it into the grievance box" and that "nothing" resulted from his grievance,

he must not have completed the administrative process by pursuing the various appeals.

The inferences drawn by defendants, however, are not the only inference that may be

drawn from the allegations in the complaint.  First, the fact that Plaintiff describes in detail the

manner in which he completed step one of the administrative process does not mandate the

conclusion that Plaintiff took no further steps.  Plaintiff was not legally required to specifically

plead exhaustion, much less detail all the steps taken pursuant to the IGRP.  See Jones, 549 U.S.

at 216.  While the form complaint prompted Plaintiff to describe the "steps" he took in

connection with his grievance, it did not caution him to list all the steps and provided only three

short lines on which to provide this information.

Second, Plaintiff's description of the results of his grievance is ambiguous.  Defendants

interpret Plaintiff's statement that "nothing" resulted from his grievance as implying that

Plaintiff never received a response from the Inmate Grievance Resolution Committee.  However,

it is equally possible that Plaintiff meant that "nothing" favorable to him resulted from the

completed grievance procedure.  Since this Court does not find that "nonexhaustion is clear from

the face of the complaint," this Court declines to dismiss this action for failure to exhaust

administrative remedies at this juncture.  See McCoy, 255 F. Supp. 2d at 251.  To the extent that

defendants can adduce evidence to establish nonexhaustion, they may renew this argument upon

a motion for summary judgment.

### III. *Defendants' Arguments Relating to 42 U.S.C. § 1983*

Defendants' remaining arguments contend that Plaintiff has failed to state a claim against defendants under 42 U.S.C. § 1983. Section 1983 provides that:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State . . . subjects, or causes to
> be subjected, any citizen of the United States . . . to the deprivation
> of any rights, privileges, or immunities secured by the Constitution
> and laws, shall be liable to the party injured . . . .

This section does not create any independent substantive rights but "provides 'a method for vindicating federal rights elsewhere conferred,' including under the Constitution." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010) (quoting Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979)). In a claim brought pursuant to § 1983, "[t]he conduct at issue 'must have been committed by a person acting under color of state law' and 'must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" Id. (quoting Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994)).

### A. *Personal Involvement and Municipal Liability*

"[I]t is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d. 880, 885 (2d Cir. 1991)). "[A] defendant who occupies a supervisory position may be found personally involved in the deprivation of a plaintiff's constitutionally protected … interests in several ways." Id. "Personal involvement" may be established by evidence of direct participation by the defendant in the challenged conduct, or by evidence of a supervisory official's "(1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights

of others by failing to act on information regarding the unlawful conduct of subordinates."

Hayut v. State Univ. of N.Y., 352 F.3d 733, 753 (2d Cir. 2003).  However, "[t]he fact that [a

defendant] was in a high position of authority is an insufficient basis for the imposition of

personal liability."  Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065 (2d Cir. 1989).

Rather, "a plaintiff must plead that each Government-official defendant, through the official's

own individual actions, has violated the Constitution."  Iqbal, 556 U.S. at 676.  A complaint

based upon a violation under Section 1983 that does not allege facts establishing the personal

involvement of a defendant fails as a matter of law.  See Costello v. City of Burlington, 632 F.3d

41, 48-49 (2d Cir. 2011).

Similarly, respondeat superior cannot be used to establish municipal liability.

Richardson v. Nassau County, 277 F. Supp. 2d 196, 204 (E.D.N.Y. 2003) (citing Board of

County Comm'rs v. Brown, 520 U.S. 397, 404-05 (1997)).  "[U]nder § 1983, local governments

are responsible only for their own illegal acts," and "are not vicariously liable … for their

employees' actions."  Connick v. Thompson, --- U.S. ---, 131 S. Ct. 1350, 1359 (2011) (internal

quotations and citations omitted).  "Plaintiffs who seek to impose liability on local governments

under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury."

Id. (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)).  Thus, "[i]n order to state

a claim for municipal liability under Monell . . . , a plaintiff must allege that 'the action that is

alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation,

or decision officially adopted and promulgated by [the municipality's] officers.'"  Ceparano v.

Suffolk County Dep't of Health, 485 F.App'x 505, 508 (2d Cir. 2012) (summary order) (quoting

Monell, 436 U.S. at 690).

In their third argument in support of the instant motion to dismiss, defendants argue that

Plaintiff has not adequately alleged personal involvement on the part of any defendant.  In their

fourth argument, defendants note that Plaintiff's complaint does not allege that any of the actions which Plaintiff claims to be unconstitutional arise from a municipal policy or custom. Both of these arguments are meritorious.

Plaintiff has not alleged the direct participation of any of the Individual Defendants in any wrongdoing alleged in his complaint, or any theory upon which to find them liable in their supervisory capacities. In fact, aside from the caption and that section of the form complaint in which Plaintiff lists the names and addresses of each defendant (Complaint, ¶ III), the only place in which the complaint even mentions any of these defendants is on the final page, where a hand-written notation indicates that a copy of the complaint was sent to Warden Cripps. While supervisory liability under Section 1983 can be established by showing that a defendant failed to remedy a wrong after being informed through a report or appeal, see, e.g., Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997), courts within the Second Circuit have repeatedly held that "[r]eceipt of letters or grievances . . . is insufficient to impute personal involvement." Voorhees v. Goord, No. 05 Civ. 1407(KMW)(HBP), 2006 WL 1888638, at *5 (S.D.N.Y. Feb. 24, 2006) (citation omitted). Accordingly, even the notation regarding Warden Cripps is insufficient to state a cause of action under 42 U.S.C. § 1983. Plaintiff's Section 1983 claims against the Individual Defendants are, therefore, dismissed for failure to allege personal involvement.

Similarly, Plaintiff's claims against the City of New York and its agency, DOC, must be dismissed for failure to allege any municipal policy or custom that resulted in acts or omissions at issue in this action. Most of Plaintiff's claims are based on alleged violations of the Minimum Standards set forth in the Rules of the City of New York. Any constitutional violations alleged by these causes of action did not result from a municipal policy, but from a violation of that policy.

Only two or three of Plaintiff's claims are unrelated to the Minimum Standards. First, Plaintiff alleges that he was exposed to friable asbestos emanating from exposed pipes in the third-floor dormitory in which Plaintiff was housed during his incarceration at AMKC. Second, Plaintiff alleges that he was forced to use the stairs six times a day, which exacerbated arthritis in his back. Third, Plaintiff alleges that he sought medical treatment for his back, only to be told by medical personnel that there was nothing they could do for him. Plaintiff does not allege that any of the acts or omissions giving rise to these claims arise from a municipal policy or custom. Accordingly, all of Plaintiff's claims against the City of New York must be dismissed.[4]

Although this Court concludes that Plaintiff's claims against the Individual Defendants must be dismissed for lack of allegations of personal involvement and that Plaintiff's claims against the City must be dismissed under Monell, supra, this Court must still evaluate the defendants' second argument – that the allegations in Plaintiff's complaint failed to state a claim under 42 U.S.C. § 1983 – in order to determine whether or not to grant the pro se Plaintiff leave to re-plead. The Second Circuit has repeatedly held "that district courts generally should not dismiss a pro se complaint without granting the plaintiff at least one opportunity to amend." DeBoe v. Du Bois, 503 F.App'x 85, 87 (2d Cir. 2012) (summary order) (citing Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) and Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991)); see also Hunt v. Klein, 476 F.App'x 889, 891 (2d Cir. 2012) (summary order) ("we generally disfavor the dismissal of pro se complaints without leave to replead"). "However,

---

[4] Plaintiff's claims against defendant DOC must also be dismissed because DOC is not a suable entity. The New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law." N.Y.C. Admin. Code & Charter Ch. 16 § 396. Accordingly, DOC, an agency of the City of New York, cannot be independently named as a defendant. See, e.g., McNeil v. City of New York, NYPD, No. 13-CV-4579 (ARR), 2013 WL 4761142, at *2 (E.D.N.Y. Sept. 3, 2013) (holding that DOC and other "agencies of the City of New York … lack independent legal existence and are not suable entities"); Campbell v. New York City, No. 12 CV 2179 (CBA), 2012 WL 3027925, at *2 (E.D.N.Y. July 23, 2013) (dismissing claims against DOC on the ground that it is a non-suable entity).

leave to amend is not necessary when it would be futile." <u>Myers v. City of New York</u>, ---

F.App'x ---, No. 12-4032, 2013 WL 3603784, at *1 (2d Cir. Jul. 16, 2013) (summary order).

### B. Plaintiff's Standing to Allege Certain Claims regarding Visitation and Recreation

Before addressing the specific Section 1983 claims raised in Plaintiff's complaint, this

Court will address defendants' argument that Plaintiff lacks standing to raise certain claims

relating to visitation and recreation.  To satisfy the standing requirements of Article III of the

United States Constitution, "a plaintiff must show (1) [he] has suffered an 'injury in fact' that is

(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2)

the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as

opposed to merely speculative, that the injury will be redressed by a favorable decision."

<u>Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC)</u>, 528 U.S. 167, 180-81 (2000)

(quoting <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560–61 (1992)).  Generally, a plaintiff

"has standing to seek redress for injuries done to him, but may not seek redress for injuries done

to others." <u>Moose Lodge No. 107 v. Irvis</u>, 407 U.S. 163, 166 (1972).  Thus, to have standing to

bring a claim under 42 U.S.C. § 1983, plaintiffs must "demonstrate that they personally suffer

from a violation of their civil rights." <u>Padberg v. McGrath-McKechnie</u>, 203 F. Supp. 2d 261,

275 (E.D.N.Y. 2002).  Moreover, a pro se litigant cannot represent anyone other than himself,

not even his own relatives.  <u>See</u> <u>Cheung v. Youth Orchestra Foundation of Buffalo, Inc.</u>, 906

F.2d 59, 61 (2d Cir. 1990).

In this case, one of Plaintiff's claims relating to visitation seeks to vindicate the rights of

Plaintiff's fiancée, rather than Plaintiff's own rights.  The complaint alleges that Plaintiff's

fiancée was strip searched, inappropriately touched by female officers and asked to remove her

sanitary napkin during visits to the AMKC.  Complaint ¶ IV, supp. p. 5.  Although Plaintiff

states that these actions were "insulting" to both him and his fiancée, <u>id.</u>, these allegations only

make out a violation of the fiancée's rights, not Plaintiff's. Plaintiff lacks standing to litigate the wrongs allegedly suffered by his fiancée.

Similarly, Plaintiff's complaints about a DOC policy that automatically ends visits whenever an inmate or his visitor uses the bathroom appears to seek relief for persons other than Plaintiff. The complaint does not allege that Plaintiff himself has ever had a visit cut short for this reason. In addition, while the complaint faults the policy for failing to "take[ ] into consideration" an inmate's "Bladder problems," id. at 4, Plaintiff does not allege that he has a bladder problem. Since the complaint does not seek injunctive relief, but only money damages, Plaintiff lacks standing to pursue these claims.

In contrast, Plaintiff's claims about having to visit indoors and about recreation, liberally construed, allege a violation of Plaintiff's rights. First, the complaint specifically alleges that Plaintiff has had at least one visitor – his fiancée. Accordingly, Plaintiff's allegations that, even though Section 1-09 of the Minimum Standards requires DOC to "make every effort to utilize outdoor areas for visits during the warm weather months," the outdoor option is "never afforded to us inmates and our visitors," Complaint, ¶ IV, supp. p. 4 (quoting 40 RCNY § 1-09(b)(5)), implies that Plaintiff himself was denied outdoor visitation. Similarly, Plaintiff's allegations relating to the deprivation of recreation allege that "inmates," including Plaintiff, cannot access the Universal weight equipment and cannot use the gym during inclement weather. Id. at 3-4. Since these claims seek to vindicate Plaintiff's own rights, Plaintiff has standing to pursue them.

### C. The Constitutional Bases for Plaintiff's § 1983 Claims

In paragraph V of his form complaint, Plaintiff states that he is seeking money damages for, inter alia, "Deliberate Indifference" and a violation of his Eighth Amendment rights. Although the Eighth Amendment is inapplicable to Plaintiff's case, see United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999) ("[T]he Eighth Amendment's protection does not apply 'until

after conviction and sentence . . . .'") (quoting <u>Graham v. Connor</u>, 490 U.S. 386, 392 n. 6 (1989))), the facts alleged in the complaint suggest that Plaintiff is advancing a Fourteenth Amendment claim based on deliberate indifference to (1) unconstitutional conditions of confinement and (2) serious medical needs. "[A] person detained prior to conviction receives protection against mistreatment at the hands of prison officials under … the Due Process Clause of the Fourteenth Amendment if held in state custody." <u>Caiozzo v. Koreman</u>, 581 F.3d 63, 69 (2d Cir. 2009). Since the Fourteenth Amendment provides protection at least as great as the protection the Eighth Amendment provides to convicted prisoners, <u>see</u> <u>City of Revere v. Mass. Gen. Hosp.</u>, 463 U.S. 239, 243-45 (1983), the Second Circuit has long applied Eighth Amendment standards to Fourteenth Amendment deliberate indifference claims. <u>Caiozzo</u>, 581 F.3d at 70. Accordingly, in evaluating whether Plaintiff has adequately alleged a Fourteenth Amendment violation, this Court examines the Eighth Amendment standards relating to deliberate indifference clams.

### 1. *Conditions of Confinement*

"To state an Eighth Amendment claim based on conditions of confinement, an inmate must allege that (1) objectively, the deprivation the inmate suffered was 'sufficiently serious that he was denied the minimal civilized measure of life's necessities,' and (2) subjectively, the defendant official acted with 'a sufficiently culpable state of mind … such as deliberate indifference to inmate health or safety.'" <u>Walker v. Schult</u>, 717 F.3d 119, 125 (2d Cir. 2013) (quoting <u>Gaston v. Coughlin</u>, 249 F.3d 156, 164 (2d Cir. 2001)). "To meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." <u>Id.</u> (citing <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981), and <u>Phelps v. Kapnolas</u>, 308 F.3d 180, 185 (2d Cir. 2002) (per curiam)). To

meet the subjective element, the plaintiff must show that the defendant acted with "more than mere negligence." <u>Farmer v. Brennan</u>, 511 U.S. 825, 835 (1994).

Although defendants argue that "[p]laintiff has failed to satisfy both prongs of the standard, both with regard to his alleged medical needs and the conditions of his confinement," Defendants' Memo at 11, defendant's arguments relating to conditions of confinement principally focus on the objective prong. Specifically, defendants argue that the Minimum Standards violations listed by Plaintiff did not deprive Plaintiff of "the minimal civilized measures of life's necessities" and, therefore, do not rise to the level of constitutional violations. <u>Id.</u> at 14-16.

Preliminarily, this Court notes that violations of city or state regulations do not equate to violations of federal law or federal constitutional rights. <u>See</u>, e.g., <u>Edwards v. Johnson</u>, 209 F.3d 772, 779 (5th Cir. 2000) ("a violation of prison regulations in itself is not a constitutional violation"); <u>Hovater v. Robinson</u>, 1 F.3d 1063, 1068 n. 4 (10th Cir.1993) (a violation of a prison regulation "does not equate to a constitutional violation"). Accordingly, allegations of a violation of the Minimum Standards, which reflect the New York City Board of Correction's views of "the basic elements necessary to promote safe, secure and humane jail environments," http://www.nyc.gov/html/boc/html/rules/minimum_standards.shtml, do not make out a violation of constitutional rights or federal law. <u>See, e.g.</u>, <u>Jones v. Schriro</u>, No. 10 Civ. 5352, 2010 WL 2038783, at *2 (S.D.N.Y. Mar. 30, 2011) (report and recommendation observing that violations of the Minimum Standards are not per se unconstitutional), adopted, 2011 WL 2038968 (S.D.N.Y. May 28, 2011). Nonetheless, since the acts and omissions alleged to violate the Minimum Standard may themselves suggest an Eighth Amendment violation, this Court must carefully examine the allegations underlying Plaintiff's claims that the Minimum Standards were violated.

### a. *Allegations regarding Clothing*

Plaintiff's complaint alleges a violation of five Minimum Standards. First, Plaintiff's complaint alleges a violation of Section 1-03(g)(1), which provides that prisoners are "entitled to wear clothing provided by [DOC] as needed" and lists the garments that DOC is required to supply, including shirts, pants and underwear. "[P]rison officials violate the Constitution when they deprive an inmate of his 'basic human needs' such as food, clothing, medical care, and safe and sanitary living conditions." Walker, 717 F.3d at 125 (quoting Rhodes, 452 U.S. at 347). Thus, the Eighth Amendment imposes duties on prison official to ensure that inmates receive adequate clothing. See Farmer, 511 U.S. at 832.

Although Section 1-03(g)(1) requires DOC to provide certain clothing if "needed," Plaintiff does not allege that he needed any particular item of clothing. Rather, Plaintiff alleges only that neither he "nor anyone else" that he encountered during his 60-day stay at AMKC was provided with any of the garments listed in § 1-03(g)(1). Plaintiff does not specifically allege that he was denied adequate clothing.

Read liberally, Plaintiff's complaint could be read as implying that he (and all of his fellow prisoners at AMKC) have been deprived of clothing. However, that would be an absurd reading of the pleading, given the notable lack of any allegations of inadequate clothing. If Plaintiff and his fellow inmates were compelled to go naked, even a pro se litigant would surely mention that fact. Moreover, this Court takes judicial notice of the fact that Section 1-03(g)(3) expressly permits detainees "to wear non-facility clothing" unless and until DOC establishes the "clothing services" described in section 1-03(h)(2). In light of this provision, the only reasonable interpretation of Plaintiff's allegation that no inmate he has encountered at AMKC has been provided with any of the garments listed in § 1-03(g)(1) is that these detainees are wearing their own clothes.

### b. *Allegations regarding Razors*

Second, Plaintiff's complaint alleges a violation of Section 1-03(c)(1), which provides that prisoners shall be permitted to shave daily and that, "[u]pon request, necessary shaving items shall be provided at [DOC] expense." The Second Circuit has "recognized that deprivation of toiletries, and especially toilet paper, can rise to the level of unconstitutional conditions of confinement," Trammell v. Keane, 338 F.3d 155, 165 (2d Cir. 2003), and has cited with approval a district court opinion holding that "[t]he failure to regularly provide prisoners with … toilet articles including soap, razors, combs, toothpaste, toilet paper, access to a mirror and sanitary napkins for female prisoners constitutes a denial of personal hygiene and sanitary living conditions." Walker, 717 F.3d at 127 (quoting Atkins v. County of Orange, 372 F. Supp. 2d 377, 406 (S.D.N.Y. 2005)). However, "[c]ourts are extremely reluctant … to find constitutional violations based on temporary deprivations of personal hygiene and grooming items." Dillon v. City of New York, No. 12 Civ. 6746 (LAP), 2013 WL 3776252, at *5 (S.D.N.Y. Jul. 18, 2013) (quoting Myers v. City of N.Y., No. 11 Civ. 8525 (PAE), 2012 WL 3776707, at *8 (S.D.N.Y. Aug. 29, 2012) (alteration in Myers). Moreover, at least one district court has held that a failure to provide razors for shaving, standing alone, does not "rise to the level of constitutional concern." McCoy, 255 F. Supp. 2d at 260.

In this case, the complaint implies that razors were only periodically unavailable, stating that razors were available "for 20 or more" of the "past 60 days." Complaint ¶ IV, supp. p. 2. While the complaint also alleges that "there were no razors at [Plaintiff's] disposal" on each of the three days on which he had court appearances, the complaint does not allege that Plaintiff specifically requested the razors. In light of the authorities cited above, this Court finds that Plaintiff's allegations regarding the sporadic availability of razors to be insufficient to state a Constitutional claim.

### c. Allegations regarding Bedding

Third, Plaintiff's complaint alleges a violation of Section 1-03(i)(1), which provides a list of the bedding prisoners are to receive upon admission to AMKC: two sheets, a pillow and pillow case, a mattress and mattress cover, and "sufficient blankets to provide comfort and warmth." Complaint ¶ IV, supp. P. 3. The complaint alleges that Plaintiff was given only "1 towel and 1 sheet" upon his admission to AMKC. Id. As a result, Plaintiff was forced to sleep on "bare mattresses … for days" until he received an incomplete "set up," and contracted "skin rashes" from having to sleep on the bare mattresses. Id. The complaint does not define a "set up" or explain what rendered it incomplete, but specifically alleges that Plaintiff never received a pillow or mattress cover. Id.

These allegations are insufficient to make out an Eighth Amendment violation. Although prison conditions may not be so harsh as to "involve the wanton and unnecessary infliction of pain," the Constitution does not require "comfortable" prisons. Rhodes, 452 U.S. at 347 (1981). Accordingly, allegations that DOC failed to provide a pillow and mattress cover are insufficient to state a claim under the Eighth or Fourteenth Amendments. See Simmons v. Cripps, No. 12 Civ. 1061(PAC)(DF), 2013 WL 1290268, at *16 (S.D.N.Y. Feb. 15, 2013) (report and recommendation), adopted, 2013 WL 1285417 (S.D.N.Y. Mar. 28, 2013)) (allegations that DOC failed to provide inmate with a pillow and mattress cover insufficient to state a Fourteenth Amendment claim). In addition, even assuming, arguendo, that Plaintiff's skin rashes were caused by exposure to allergens on the mattresses or by the mattresses' unsanitary condition, Plaintiff alleges that he was forced to sleep on the bare mattresses only temporarily, for a period of days. "The Eighth Amendment is generally not violated … where unsanitary conditions are temporary." Florio v. Canty, --- F. Supp. 2d ---, No. 12 Civ. 8348 (AJP), 2013 WL 3781549, at *5 (S.D.N.Y. Jul. 22, 2013) (quoting Ortiz v. Dep't of Corr., No. 08 Civ. 2195(RJS)(HBP), 2011

WL 2638137 at *7 (S.D.N.Y. Apr. 29, 2011) (report and recommendation), adopted, 2011 WL 2638140 (S.D.N.Y. Jul 05, 2011)).

### d. *Allegations concerning Recreation*

Fourth, Plaintiff's complaint alleges a violation of Section 1-06, which recognizes the necessity of providing prisoners with adequate indoor and outdoor recreational opportunities. Plaintiff's complaint asserts that, during bad weather, inmates are prevented from exercising in the gym because the corrections officers use it to play basketball. The complaint further alleges that inmates are never allowed use a room contain Universal weight equipment because it has been "taken over by the Correction Department officers." Complaint ¶ IV, supp. pp. 3-4.

Courts have recognized that exercise is a "human need" protected by the Constitution, Wilson v. Seiter, 501 U.S. 294, 304 (1991), and that "some opportunity for exercise must be afforded to prisoners." Anderson v. Coughlin, 757 F.2d 33, 35 (2d Cir. 1985). However, "there is no constitutional right to exercise indoors," Patterson v. City of New York, No. 11 Civ. 7976 (DLC), 2012 WL 3264354, at *7 (S.D.N.Y. Aug. 9, 2012), nor any constitutional right to use exercise equipment. As the Second Circuit stated in Anderson:

> No doubt indoor exercise space would be useful to assure opportunity for vigorous exercise during inclement weather, and equipment . . . would enable the . . . prisoners to make better use of their exercise time. However, neither an occasional day without exercise when weather conditions preclude outdoor activity nor reliance on running, calisthenics, and isometric and aerobic exercises in lieu of games is cruel and unusual punishment.

757 F.2d at 36. Accordingly, Plaintiff's allegations regarding his inability to access the gym during bad weather or to use the Universal weight equipment do not state a basis for a Fourteenth Amendment claim.

### e. *Allegations regarding Visitation*

Fifth, Plaintiff's complaint alleges a violation of Section 1-09, relating to visitation. Although Plaintiff's complaint alleges three separate violations of this section, Plaintiff lacks standing to raise two of these three arguments for the reasons stated on pages 15-17, <u>ante</u>. Accordingly, the only visitation-related claim which Plaintiff has standing to bring relates to DOC's failure to provide for outdoor visits.

This claim does not make out a violation of Minimum Standards, much less a violation of the Constitution. Section 1-09(b)(5) does not create a right to outdoor visits, but merely requires that DOC "make every effort to utilize outdoor areas for visits during the warm weather months." Plaintiff does not allege that DOC failed to make such an effort, and this Court is unaware of any authorities suggesting that the Constitution guarantees a right to outdoor visitation. To the contrary, this Court is aware of cases holding that, even assuming prisoners have a right to visits under the First Amendment, such rights are "subject to reasonable restrictions on the time, place and manner of visits," <u>Mills v. Fischer</u>, 497 F.App'x 114, 116 (2d Cir. 2012) (summary order), and that regulations which "bear a rational relation to legitimate penological interests" would not violate that right. <u>Overton v. Bazzetta</u>, 539 U.S. 126, 132 (2003).

### f. *Allegations relating to Plaintiff's Arthritis*

In addition to alleging violations of the Minimum Standards, the supplemental pages attached to paragraph IV of Plaintiff's complaint contain a paragraph relating to the exacerbation of Plaintiff's arthritic condition ("Paragraph (4)") and a paragraph relating to Plaintiff's exposure to friable asbestos ("Paragraph (5)"). Paragraph (4), which appears on supplemental pages 5-6, is susceptible of two interpretations. First, Plaintiff may be advancing a Fourteenth Amendment conditions-of-confinement claim, alleging that he was punished without due process by being

forced to walk up and down three flights of stairs despite his arthritic condition.  Second, Plaintiff may be asserting a claim of inadequate medical care, alleging that AMKC's medical staff was deliberately indifferent to Plaintiff's serious medical needs in claiming that there was nothing they could do to alleviate Plaintiff's back pain,.

Since defendants construe Paragraph (4) as alleging only deliberate indifference to serious medical needs, their motion does not expressly address the possibility that Paragraph (4) challenges a condition of confinement.   However, this Court has an obligation to sua sponte "review … a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and "dismiss . . . any portion of the complaint … [which] fails to state a claim upon which relief may be granted . . . ."  28 U.S.C. § 1915A(a), (b).  Accordingly, this Court will address the question of whether Plaintiff's allegations concerning his arthritis state a conditions-of-confinement claim.

This Court answers that question in the negative.  Plaintiff does not allege any deliberate action on the part of any defendant or other DOC employee.  Plaintiff alleges that he was temporarily forced to use the stairs because an elevator was not working.  Although Plaintiff claims that use of the stairs caused the arthritis in his back "to flare and become more advanced, causing [him] considerable pain and back spasms," Complaint, ¶ IV, supp. p. 5, Plaintiff does not allege that he requested relocation to a lower floor.  Indeed, nothing in the complaint suggests that any of defendants or any other DOC officials were made aware of Plaintiff's difficulty in using the stairs or that the pain that Plaintiff was allegedly suffering resulted from this difficulty.  In sum, nothing in the complaint suggests that Plaintiff can state a valid conditions-of-confinement claim based on the allegations relating to his arthritic condition.

## 2. Deliberate Indifference to Serious Medical Needs

### a. Plaintiff's Allegations regarding Treatment of his Back

In Paragraph IV of his form complaint and again in Paragraph (4), Plaintiff alleges that he sought medical treatment for his arthritic back at AMKC. However, the allegations in the form complaint and Paragraph (4) differ in their description of the response Plaintiff received from AMKC's medical staff. Paragraph (4) alleges that Plaintiff was told only that there was "nothing" the medical personnel could do for him and that he would "just have to deal with the pain." In contrast, the form complaint alleges that while medical personnel told Plaintiff there was nothing they could do, they also said he "would have to deal with the pain and get therapy and later on an operation on [his] back." Complaint, ¶ IV. Although Plaintiff's complaint does not express dissatisfaction with the response Plaintiff received from the medical personnel, defendants construe Plaintiff's allegations relating to his back pain as an attempt to allege inadequate medical care.

"In order for an inmate to state a claim of constitutional deprivation with regard to his access to medical care during pre-trial detention, the inmate must demonstrate that his medical needs were objectively 'sufficiently serious,' and that the individual to be charged with the violation was aware of, and deliberately indifferent to, those needs." Ceparano, 485 F.App'x at 507. The first, objective component requires that "'the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists.'" Hill, 657 F.3d at 122 (quoting Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996)). The second, subjective component requires that "the official charged with deliberate indifference … act with a 'sufficiently culpable state of mind.'" Id. (citing Wilson, 501 U.S. at 298). "[T]he official must 'know[ ] of and disregard[ ] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer, 511 U.S. at 837).

In their motion to dismiss, defendants first argue that Plaintiff's medical needs were not sufficiently serious. In support of this argument, defendants cite two cases: Veloz v. New York, 339 F. Supp. 2d 505 (S.D.N.Y. 2004), and Davis v. Reilly, 324 F. Supp. 2d 361, 368 (E.D.N.Y. 2004). Both are distinguishable. First, Davis did not involve arthritis, but held that "a sprained back and neck coupled with pain in the left testicle, [did] not constitute a serious medical condition." Davis, 324 F. Supp. 2d. at 368. Second, Veloz, which decided a motion for summary judgment, did not hold that arthritis of the sort at issue in this case can never create a sufficiently serious medical need. Rather, that case held only that Veloz had not adduced evidence that "his condition was so serious that it could have produced 'death, degeneration, or extreme pain.'" Veloz, 339 F. Supp. 2d at 525 (citing Hathaway, 37 F.3d at 66).

In fact, several Circuit Courts of Appeals have held or implied that arthritis can constitute a sufficiently serious medical condition. For example, the Fourth Circuit has held that records attached to an inmate's complaint, which showed that he suffered from "arthritis and degenerative disc disease and that he had chronic pain in his back, leg, pelvis and hip," were sufficient to "raise a plausible claim that he had a serious medical condition." Adams v. Southwest Virginia Reg'l Jail Auth., No. 12-8057, 2013 WL 1943798, at *2 (4th Cir. May 13, 2013) (summary order). Similarly, the Seventh Circuit has noted "that a broad range of medical conditions may be sufficient to meet the objective prong of a deliberate indifference claim, including . . . arthritis . . . ." Roe v. Elyea, 631 F.3d 843, 861 (7th Cir. 2011). Finally, the Second Circuit has characterized arthritis as "arguably [a] serious underlying condition[ ]." Bilal v. White, 494 F.App'x 143, 145 (2d Cir. 2012) (summary order). In light of these authorities,

this Court declines to hold that Plaintiff did not have sufficiently serious medical needs to state a claim for a failure to provide adequate medical care.

However, this Court concurs with defendants' argument that Plaintiff's complaint fails to allege deliberate indifference on the part of AMKC medical personnel, much less any of the defendants named in this action. First, while the complaint is unclear as to what action AMKC's medical personnel took, Plaintiff's form complaint states that they told Plaintiff that he "would have to . . . get therapy and later . . . an operation." This language implies that the medical personnel prescribed a course of treatment. Even if Plaintiff was dissatisfied with that proposed course of treatment, "mere disagreement over the proper treatment does not create a constitutional claim . . . [s]o long as the treatment given is adequate . . . ." <u>Chance v. Armstrong</u>, 143 F.3d 698, 703 (2d Cir.1998).

Second, even assuming that AMKC's medical personnel did not prescribe therapy, but only told Plaintiff that there was nothing they could do to help him, Plaintiff's complaint fails to allege deliberate indifference. Plaintiff's complaint does not name any of AMKC medical personnel as defendants or fault them in any way. Indeed, the complaint does not even suggest that the medical personnel were mistaken in their assessment of Plaintiff's condition or treatment options. Furthermore, even if Plaintiff were to allege that the medical personnel were mistaken, that would not state a deliberate indifference cause of action since a prisoner's "mere allegations of negligent malpractice do not state a claim of deliberate indifference." <u>Hathaway v. Coughlin</u>, 99 F.3d 550, 553 (2d Cir.1996).

### b. *Plaintiff's Allegations regarding Exposure to Asbestos*

Plaintiff's complaint also alleges that defendants were deliberately indifferent to Plaintiff's serious medical needs by knowingly exposing him to friable asbestos emanating from deteriorating pipes in the dormitory in which he was housed at AMKC. The Second Circuit has

held that a prisoner who "claims that he was exposed to friable asbestos while incarcerated …

and [that] defendants knowingly failed to protect him from such exposure" states an Eighth

Amendment claim.  LaBounty v. Coughlin, 137 F.3d 68, 72 (2d Cir. 1998).  That claim arises

not from "the narrow right to be free from exposure to asbestos, but a broader 'right to be free

from deliberate indifference to serious medical needs' [which] . . . had been clearly established

as far back as 1976 by Estelle v. Gamble, 429 U.S. 97, 104 . . . (1976)."  Warren v. Keane, 196

F.3d 330, 333 (2d Cir. 1999) (quoting LaBounty, 137 F.3d at 74) (bracketed material added).

Although LaBounty did not discuss the level of exposure necessary to state an Eighth

Amendment claim, several district court opinions have held that not just any level of exposure to

hazardous materials is sufficient to give rise to an Eighth Amendment claim.  These courts have

held that an inmate must be exposed to an "unreasonably high concentration of air-borne

asbestos particles" in order to state a cognizable claim under the Eighth Amendment.  Simmons

v. Gowanda Corr. Fac., No. 13-CV-0647Sc, 2013 WL 3340646, at *2 (S.D.N.Y. July 1, 2013)

(citing Pack v. Artuz, 348 F. Supp. 2d 63, 79-80 (S.D.N.Y. 2004) ("For exposure to airborne

asbestos fibers to create a substantial risk of serious harm, however, the intensity and duration of

the exposure must both be significant.")); see also Wright v. New York State Dep't of Corr.

Servs., No. 06 Civ. 3400 (RJS) (THK), 2008 WL 5055660, at *10 (S.D.N.Y. Oct. 10, 2008)

("Exposure to unsafe levels of toxic substances, such as tobacco smoke or asbestos, may suffice

as sufficiently dangerous conditions to satisfy the objective element of an Eighth Amendment

claim.")

In addition, several courts have held that a plaintiff cannot state a claim for money

damages relating to his asbestos exposure absent allegations of physical injury.  The PLRA

provides that "[n]o federal civil action may be brought by a prisoner … for mental or emotional

injury suffered while in custody without a prior showing of physical injury."  42 U.S.C.

§ 1997e(e). Relying on this provision, several courts have concluded that a plaintiff who fails to allege physical injury arising from the asbestos exposure has not stated a claim for money damages relating to that exposure. See, e.g., Herman v. Holiday, 238 F.3d 660, 665-66 (2d Cir. 2001); Black v. Blackmun, No. 11 Civ. 2372 (BMC) (ALC), 2011 WL 6019394, at *5 (E.D.N.Y. Dec. 1, 2011), (holding that a plaintiff's claim relating to asbestos exposure failed to state a claim because the plaintiff did not allege that he "developed any diseases or conditions relating to that exposure.")

Although Plaintiff's complaint does not specify the degree of exposure or that he suffered any injury, allegations in the complaint suggest the possibility that a valid claim could be stated. The complaint implies that Plaintiff was housed in the dormitory containing the friable asbestos throughout his 60-day stay at AMKC. Although Plaintiff's complaint does not allege that he suffered any physical effects as a result of that exposure, that complaint was drafted in mid-September 2011—more than two years ago. Since symptoms of asbestos-related illness may not become manifest until years after exposure, see In re Quigley Co., Inc., 676 F.3d 45, 58 (2d Cir. 2012), this Court cannot assume from Plaintiff's failure to allege any ill-effects in his complaint that he would be unable to do so now. Accordingly, in an abundance of caution, this Court will grant Plaintiff leave to re-plead his deliberate indifference claim relating to his alleged asbestos exposure. See Shomo v. City of New York, 579 F.3d 176, 184 (2d Cir. 2005) (holding, in a case in which claims against DOC's Commissioner, Deputy Commissioner, and other supervisors were dismissed for lack of personal involvement, that a DOC inmate should have been permitted to re-plead claims against these defendant because the Court could not "rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim").

*CONCLUSION*

For the reasons set forth above, defendants' motion to dismiss the complaint in this action is granted. Plaintiff is granted leave to amend his pleading, but only with respect to his claim that DOC personnel were deliberately indifferent to his serious medical needs by allowing Plaintiff to be exposed to friable asbestos.

If Plaintiff wishes to pursue this claim, Plaintiff shall file an amended complaint with this Court within thirty (30) days of the date of this Memorandum and Order. The amended complaint shall be entitled, "Amended Complaint," and bear docket number 11-CV-4807 (SLT) (LB). The defendant(s) named in the amended complaint need not be the same defendants named in the original complaint, but should be individuals who knew of the asbestos exposure and failed to take action to protect Plaintiff. If Plaintiff fails to file his amended complaint within the time allowed, this Court may enter a judgment dismissing this action. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**


_____/s/_____
SANDRA L. TOWNES
United States District Judge


Dated: September 30, 2013
       Brooklyn, New York